UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Lajuana Lampkins as Administratrix of the Estate of Prince Akbar, Deceased<br><br>Plaintiff,<br><br>v.<br><br>Officers George Jones and Donielle Redwanc, and Calumet City, a Municipal Corporation,<br><br>Defendants. | No. 10 CV 7993<br>Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

Plaintiff Lajuana Lampkins, as former administrator of Prince Akbar's estate,[1] brought this action against Officer George Jones, Officer Donielle Redwanc, and the City of Calumet City ("Defendants") alleging use of excessive force in violation of the Fourth Amendment under 42 U.S.C. § 1983, conspiracy in violation of the Fourteenth Amendment under 42 U.S.C. § 1983, and failure to train in violation of the Fourteenth Amendment under 42 U.S.C. § 1983. The remaining claims are Illinois state law claims seeking damages on the following bases: wrongful death, the Illinois Survival Statute, and liability for the City of Calumet City based on respondeat superior. The case is presently before the court on Defendants' motion for summary judgment. For the following reasons, I grant Defendants' motion in its entirety.

### I. STATEMENT OF FACTS

Shortly after 12:00 p.m. on January 4, 2010, Akbar entered Thornton Fractional School, located at 1605 Wentworth Avenue in Calumet City, while screaming and yelling that he was looking for the principal. School staff had difficulty escorting Akbar out of the building. After

---

[1] Decedent's brother, Sir Gerald Akbar, was substituted by Plaintiff's counsel as Administrator of the Decedent's estate on February 28, 2013.

confronting a parent outside the school, Akbar stood in the middle of the street and attempted to waive down passing automobiles. Akbar then re-entered the school, stating that his God told him to come there and that he wanted to enroll. Akbar insisted that the staff let him use the phone, but was denied. Akbar then left the school again.

School staff called the police three times to report Akbar's frightening behavior. Officer Donielle Redwanc initially responded to the call. Officer Redwanc saw Akbar at approximately 167th and Wentworth, and pulled up beside him. "Redemption was yours. You are here to help me," Akbar said. After advising dispatch that she needed a paramedic to perform a psychiatric evaluation, Akbar said "Never mind, you can't help me," and began to walk away on the sidewalk. Officer Redwanc exited her squad car and started to follow him. Akbar turned around and told Officer Redwanc that he was bipolar.

Officer George Jones then arrived on the scene and parked his squad car behind Officer Redwanc's car. Both officers claim to have used a very calm voice when they spoke to Akbar. They told him that they were not going to hurt him and that paramedics were going to make sure that he was okay before they let him go. Akbar complied with their request to walk over to the squad cars.

Standing next to the squad cars, however, Akbar became agitated when Officer Jones began patting him down and yelled "No, no, no. Fuck the police." When Officer Jones attempted to put handcuffs on Akbar, he resisted by locking up his arms. Sensing that this was going to turn into a fight, Officer Jones deployed his only taser cartridge. This had no effect on Akbar. Akbar then punched Officer Redwanc in the face with a closed fist, knocking her to the ground. Lying on the ground, Officer Redwanc called for backup.

Officer Redwanc then stood up and deployed her taser. Unfazed, Akbar struck Officer

2

Redwanc in the face again, knocking her into the squad car's side mirror. Akbar repeatedly punched Officer Jones in the face and knocked him to the ground. While Akbar punched Officer Jones on the ground, Officer Redwanc stood up and drew her gun, but did not fire because she was afraid that she would hit Officer Jones. Seeing the gun, Akbar turned towards Officer Redwanc and knocked the gun out of her hands. Akbar moved for the gun, but Officer Redwanc beat him to it with a slide, tucking the gun into her chest. Akbar began striking Officer Redwanc in the head, and slammed her head into the concrete several times.

Akbar then returned to Officer Jones and began punching him again. When Akbar returned to Officer Redwanc, Officer Jones drew his weapon. Akbar attempted to take Officer Jones' gun, but Officer Jones laid on top of it. When Akbar turned away and walked towards Officer Redwanc, Officer Jones rose to his knees and fired a round into the back of Akbar's leg and another round into Akbar's stomach. This ended the attack. Akbar was pronounced dead ten minutes after he arrived at the hospital. Both officers suffered a host of physical injuries that required physical therapy and multiple surgeries.

Testimony from numerous independent witnesses corroborates the officers' testimony regarding how severely Akbar had beaten them. One witness saw Akbar punching Officer Redwanc with alternating left and right punches while he was on top of her. He said that Akbar "was just whaling on her" and was "totally in control." Another witness saw Akbar "throwing haymakers right and left" at both officers. According to this witness, it never appeared as if either officer had Akbar under any type of control. This witness also testified that the two shots were roughly two seconds apart and that Akbar did not fall to the ground until after the second shot was fired.

## II. LEGAL STANDARD

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts" in order to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). A party will be successful in opposing summary judgment only if it presents "definite, competent evidence to rebut the motion." *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000).

I consider the record in the light most favorable to the non-moving party, and I draw all reasonable inferences in the non-movant's favor. *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir.2002). I will accept the non-moving party's version of any disputed fact, however, only if it is supported by relevant, admissible evidence. *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996).

## III. DISCUSSION

A.  Count I: Excessive Force Claim Under 42 U.S.C. § 1983

Plaintiff and Defendants dispute whether Officer Jones used reasonable and justified force. Under the Fourth Amendment's "objective reasonableness" standard, claims of excessive force in the course of arrest or other seizure are analyzed by considering "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 389 (1989); *McDonald v. Haskins,* 966 F.2d 292, 293 (7th Cir. 1992). The use of deadly force is deemed objectively reasonable "where the officer has probable cause to believe the suspect poses a threat of serious physical harm, either to the officer or to others." *Tennessee v. Garner*, 471 U.S. 1, 11 (1985).

In determining the reasonableness of the officer's conduct, all decisions must "embody allowance for the fact that police officers are often forced to make split second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Plakas v. Drinski*, 19 F.3d 1143, 1148 (7th Cir. 1994) (citing *Graham*, 490 U.S. at 397). Here, Officer Jones did not use deadly force in order to stop the escape of a potentially dangerous person; rather, he used deadly force to defend another officer and himself from an immediately dangerous person. *See id.* at 1146.

The undisputed facts in this case can lead to but one conclusion—Officer Jones' use of deadly force was objectively reasonable given Akbar's relentless attack. At the moment when Officer Jones decided to fire his gun, Akbar posed a life-threatening risk to both officers. Akbar had repeatedly punched each of them in the torso and face, endured taser discharges without any effect, reached for both of their guns, knocked both of them down at least once, and slammed

Officer Redwanc's head into the concrete several times. Until Officer Jones discharged his gun, there was never a moment where either officer had Akbar under any kind of control. The only pauses in the beating occurred when Akbar switched from punching one officer to punching the other. Where an officer has "probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer," the officer may use deadly force. *See Plakas*, 19 F.3d at 1146 (citing *Garner*, 471 U.S. at 3); *see also Graham*, 490 U.S. at 396.

Plaintiff argues that there is enough evidence to cast doubt on Defendants' self-defense claim, given the relatively low threshold for refuting self-defense claims at the summary judgment stage in deadly force cases. *See Plakas*, 19 F.3d at 1146-47. The Plaintiff, however, has failed to cast any doubt here. This is not a case where the only witnesses left to testify are the Defendant officers. Rather, there are two independent witnesses who corroborate their testimony. Both described the severity and one-sidedness of Akbar's attack. One of them saw Akbar react to the shots and testified that he did not go down until the second shot was fired.

Any argument that the Defendant Officers should have or could have taken alternative measures is not the standard by which their actions are to be judged. "There is no precedent in this Circuit (or any other) which says that the Constitution requires law enforcement officers to use all feasible alternatives to avoid a situation where deadly force can justifiably be used. There are, however, cases which support the assertion that, where deadly force is otherwise justified under the Constitution, there is no constitutional duty to use non-deadly alternatives first." *Plakas*, 19 F.3d at 1148.

Plaintiff has failed to raise a genuine issue of material fact regarding Officer Jones' split-second decision to use deadly force to protect himself and Officer Redwanc. Thus, this decision was objectively reasonable as a matter of law, and under these circumstances there can be no

violation of the Fourth Amendment.

B.        Count II: Conspiracy Claim Under 42 U.S.C. § 1983

To establish the existence of a conspiracy, a plaintiff must demonstrate that the conspirators have an agreement to inflict injury or harm upon him. *Hernandez v. Joliet Police Dep't*, 197 F.3d 256, 263 (7th Cir. 1999). "The agreement may be inferred from circumstantial evidence, but only if there is sufficient evidence that would permit a reasonable jury to conclude that a meeting of the minds had occurred and that the parties had an understanding to achieve the conspiracy's objectives." *Id.* at 262. Here, Plaintiff's conspiracy fails for two reasons. First, there is virtually nothing in the record that Officers Redwanc, Officer Jones, or anyone else involved in this incident conspired to deprive Akbar of his constitutional rights. Second, the absence of any underlying violation of Akbar's constitutional rights precludes the possibility of Plaintiff succeeding on a conspiracy claim. *See Sow v. Fortville Police Dep't*, 636 F.3d 293, 305 (7th Cir. 2011) (citing *Indianapolis Minority Contractors Ass'n, Inc. v. Wiley*, 187 F.3d 743, 754 (7th Cir. 1999)).

C.        Count III: Failure to Train Claim Under 42 U.S.C. § 1983

A municipality may only be held liable under 42 U.S.C. § 1983 for constitutional violations caused by the municipality itself through its own policy or custom. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658, 694 (1978); *Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007). Here, Plaintiff's claim for failure to train fails because there has been no violation of Akbar's constitutional rights. *See Jenkins*, 487 F.3d at 492 ("Although a municipality may be directly liable for constitutional violations by its officers when the municipality evinces a deliberate indifference to the rights of the plaintiff by failing to train adequately its officers to prevent the

7

violation, there can be no liability under *Monell* for failure to train when there has been no violation of the plaintiff's constitutional rights."); *see also Alexander v. City of South Bend*, 433 F.3d 550, 557 (7th Cir. 2006). Furthermore, Plaintiff has failed to provide any expert witness testimony, factual witness testimony, or documentary evidence demonstrating that Calumet City was deficient in training its police officers.

D.     Count IV: Illinois Wrongful Death Claim

Plaintiff's claim for wrongful death fails as a matter of law for the same reasons set forth above. A finding that a police officer's use of deadly force was reasonable due to the imminent danger of death or serious bodily injury to himself or others has been found to foreclose actions based on both the Fourth Amendment and the Illinois Wrongful Death Act. *Muhammed v. City of Chicago*, 361 F.3d 680, 683 (7th Cir. 2002) (citing 720 ILCS 5/7-5; 740 ILCS 180/1); *see also DeLuna v. City of Rockford, Ill.*, 447 F.3d 1008, 1013 (7th Cir. 2006). Even if the Court were to independently analyze Plaintiff's wrongful death claim, it is clear that the action would fail for lack of evidence that Officer Jones' conduct was willful or wanton.

E.     Count V: Illinois Survival Statute Claim

A survival action acts to preserve the rights of action for personal injury that accrued before the death of the injured person. *See* 755 ILCS 5/27-6; *see also Ellig v. Delnor Community Hosp.*, 237 Ill.App.3d 396, 401 (1992). Similar to Plaintiff's wrongful death claim, Plaintiff's survival claims must fail because Officer Jones' use of deadly force was justified and reasonable. *See Taylor v. City of Chicago*, No. 01 C 2057, 2003 WL 22282386, at *6 (N.D. Ill. Sept. 30, 2003).

F.  Count VI: Respondeat Superior Liability Against the City of Calumet City

Because this Court holds that Officers Redwanc and Jones acted reasonably under the circumstances, it follows that the City of Calumet City, as their employer, cannot be held liable to Akbar, as its liability was dependent upon the unreasonableness of the officers' actions. Because neither Officer Redwanc nor Officer Jones violated Akbar's constitutional rights, there is no basis for liability against Calumet City. *City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that department regulations might have authorized the use of constitutionally excessive force is beside the point."); *see also Tom v. Voida,* 963 F.2d 952, 962 (7th Cir.1992); *Ford v. Childers,* 855 F.2d 1271, 1276–1277 (7th Cir. 1988).

## IV. CONCLUSION

For the foregoing reasons, I grant Defendants' motion for summary judgment in its entirety.

ENTER:

*[signature: James B. Zagel]*

James B. Zagel
United States District Judge

DATE: November 4, 2014